1

2

3

4

5

6                                    UNITED STATES DISTRICT COURT
                                    WESTERN DISTRICT OF WASHINGTON
7                                              AT SEATTLE

8    JOHN T. BOOKER,

9                               Plaintiff,              Case No. C13-1390-JCC-BAT

10              v.                                       **REPORT AND
                                                        RECOMMENDATION**
11   CAROLYN W. COLVIN, Acting Commissioner
     of Social Security,
12
                                Defendant.
13

14          Plaintiff John T. Booker seeks review of the denial of his Supplemental Security Income

15   and Disability Insurance Benefits applications.  He contends the ALJ erred in (1) finding at step

16   two that he did not have a severe mental impairment; (2) evaluating medical opinions provided

17   by Sara Thompson, PA-C, and Suzanne Gomez, M.D.; and (3) discounting his credibility.  Dkt.

18   16 at 1.  As discussed below, the Court recommends the Commissioner's final decision be

19   **AFFIRMED** and the case be **DISMISSED** with prejudice.

20                                          **BACKGROUND**

21          Mr. Booker is currently 49 years old, has a ninth-grade[1] education, and has worked as a

22

23   _____

     [1] Plaintiff reported variously that he did or did not obtain a GED.  *See, e.g.*, Tr. 538, 701, 710.

     REPORT AND RECOMMENDATION - 1

drywall laborer and in various temporary laborer positions.[2]  On September 15, 2010, he applied

for benefits, alleging disability as of March 17, 2005.[3]  Tr. 152-73.  His applications were denied

initially, and he requested a hearing.  Tr. 75-80.  The ALJ conducted a hearing on March 29,

2012 (Tr. 42-71), subsequently finding Mr. Booker not disabled.  Tr. 25-37.  As the Appeals

Council denied Mr. Booker's request for review, the ALJ's decision is the Commissioner's final

decision.  Tr. 1-8.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, [4] the ALJ found:

**Step one:**  Mr. Booker last worked on March 17, 2005, the original alleged onset date.

**Step two:**  Mr. Booker's cervical degenerative disc disease with decreased range of motion, status post left foot fracture with narrowing of joints and spur formation, left mid-foot arthritis, hepatitis C, lumbar spine disc space narrowing at the L4-5 level, and left shoulder degenerative joint disease were severe.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[5]

**Residual Functional Capacity ("RFC"):**  Mr. Booker could perform light work as follows: he cannot frequently push or pull with his left side and must not climb, stoop, kneel, crouch, or crawl more than occasionally.

**Step four:**  Mr. Booker could not perform his past work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that Mr. Booker can perform, he is not disabled.

Tr. 25-37.

/

/

---

[2] Tr. 47, 214.
[3] At the administrative hearing, Mr. Booker amended his alleged onset date to August 1, 2010. Tr. 45.
[4] 20 C.F.R. §§ 404.1520, 416.920.
[5] 20 C.F.R. Part 404, Subpart P, Appendix 1.

1
2
3
4
5
6
7
8
9
10

11

12
13
14
15
16

17
18
19
20
21
22

23

**DISCUSSION**

**A.    The ALJ's Evaluation of Mr. Booker's Testimony**

The ALJ provided several reasons to discount Mr. Booker's credibility, specifically inconsistent medical evidence, inconsistent activities, failure to seek/comply with treatment, inconsistent statements, and his own observations of Mr. Booker at the administrative hearing. Tr. 32-34.  Mr. Booker contends that these reasons are not clear and convincing.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (holding that absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony). For the following reasons, the Court finds the ALJ's adverse credibility determination was supported by legally sufficient reasons.

*1.  Inconsistent Medical Evidence*

The ALJ summarized various aspects of the medical evidence regarding Mr. Booker's neck, foot, and shoulder pain, and found that the objective evidence did not corroborate impairments as severe as alleged by Mr. Booker.  Tr. 32-33.  The parties agree that lack of support in the medical record cannot alone support an ALJ's adverse credibility determination (Dkt. 16 at 15, Dkt. 17 at 2-3), but this reason was not the ALJ's only reason.

Mr. Booker goes on to argue the evidence cited by the ALJ does not support his conclusion, because he selectively described the medical evidence at issue.  Specifically, Mr. Booker contends that the ALJ omitted the "most significant findings" from his 2011 MRI, overlooked reports of "constant and worsening pain" in his left shoulder contained with a treatment note that purportedly "made no mention of shoulder pain", and overlooked the physical therapy findings of reduced range of motion in the neck and shoulder.  Dkt. 16 at 15-16.

As to the 2011 MRI findings, it is unclear how Mr. Booker reached his conclusion that

1   the ALJ's summary ("A March 2011 cervical spine [MRI] report showed a disc-osteophyte

2   complex with neural foraminal narrowing at the C5-6 level, with mild disc space narrowing at

3   the other levels of the cervical spine") is incomplete.  The ALJ's summary is consistent with the

4   summary conclusion of the MRI report.  *Compare* Tr. 32 *with* Tr. 668.

5          Mr. Booker's argument has some merit with regard to the cited treatment note regarding

6   shoulder pain, however.  The ALJ alleged that the record "contains few examination reports that

7   record consistent abnormal findings of shoulder."  Tr. 32.  The ALJ noted that one report

8   documented "severely reduced range of motion" (Tr. 32 (citing Tr. 623); another report from the

9   same month "did not mention shoulder pain[,]" but instead referenced "full upper extremity

10   strength with no motor weakness and no sensory loss."  Tr. 32-33 (citing Tr. 629).  The second

11   note referenced does indeed document normal findings as to strength, motor weakness, and

12   sensory loss, but Mr. Booker also reported experiencing shoulder pain during that appointment

13   (Tr. 627, 630).  Thus, while the ALJ's summary of the treatment note is not entirely accurate, it

14   does support the proposition for which the ALJ cited it (*i.e.*, lack of exam reports recording

15   abnormal shoulder findings).

16          Mr. Booker also notes that the ALJ's summary of the evidence regarding his neck and

17   shoulder pain did not reference physical therapy notes documenting a limited range of motion

18   and atrophy.  Dkt. 16 at 16 (citing Tr. 673).  This finding does not establish that the ALJ's

19   finding is not supported by substantial evidence, particularly because the ALJ noted that he

20   accounted for Mr. Booker's left shoulder pain by limiting him to light work that does not require

21   frequent pushing or pulling on his left side.  Tr. 33.

22          **2.     *Inconsistent Activities***

23          The ALJ noted that Mr. Booker was able to assist his neighbors with household

REPORT AND RECOMMENDATION - 4

maintenance and repair jobs, care for his personal needs without reported problems, perform

household chores, and access and maintain medical appointments on his own, despite allegations

of debilitating neck and foot pain.  Tr. 33.  The ALJ reasonably inferred that Mr. Booker's ability

to complete these tasks, particularly household maintenance and repair jobs, was inconsistent

with his allegations of neck and shoulder pain that limited his ability to stand, walk, sit, and

move, and because this inference is reasonable, it should be affirmed.  *See Morgan v. Comm'r of*

*Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to

more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### 3.    *Failure to Seek or Comply With Treatment*

The ALJ noted that Mr. Booker claimed to have mental limitations, but did not seek

regular mental health treatment.  Tr. 33.  He further inferred from Mr. Booker's cessation of

physical therapy that his pain allegations were less credible, although he did acknowledge that

Mr. Booker lacked insurance coverage to pay for continued physical therapy.  Tr. 33.

Mr. Booker's argument focuses on the ALJ's second reason: he claims that the ALJ

should have clarified at the hearing whether he ever returned to physical therapy or whether he

had pursued other modes of treatment.  Dkt. 16 at 17.  He does not dispute, however, that he

claimed to have mental limitations but had not sought regular mental health treatment.  He

offered no explanation for this lack of treatment, and does not identify any evidence in the record

that sheds light on that issue.  Because the ALJ's finding as to lack of mental-health treatment is

essentially unchallenged, this reasoning should be affirmed.

### 4.    *Inconsistent Statements*

The ALJ identified various inconsistent statements that Mr. Booker made to providers.

The Commissioner concedes that the evidence cited by the ALJ regarding Mr. Booker's

1    admissions regarding alcohol use do not support his conclusion, because the ALJ

2    misapprehended the relevant timing of the reports.  Dkt. 17 at 7 n.2.  As also noted by the

3    Commissioner, however, the record contains other evidence that would support the ALJ's

4    conclusion.  *See* Dkt. 17 at 7-8.

5          The ALJ also noted that Mr. Booker reported both that he had received his GED and

6    denied ever taking the GED exam.  Tr. 33.  This inconsistency is not particularly glaring, but it

7    does undermine the veracity of Mr. Booker's self-report and thus supports the ALJ's adverse

8    credibility determination.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ

9    appropriately considers reputation for truthfulness and inconsistencies in a plaintiff's testimony).

10         *5.      The ALJ's Observations*

11         The ALJ lastly noted that he observed Mr. Booker sitting during the hearing "with a

12   marked lean to his left, resting on his elbow.  Questioned by his representative as to the reason

13   for the lean, the claimant testified that he experienced neck pain and assumed the posture to

14   support his neck."  Tr. 34 (referencing Tr. 56, 64).  The ALJ noted that none of Mr. Booker's

15   providers ever reported that he assumed this posture during appointments, which the ALJ

16   construed as undermining the veracity of Mr. Booker's self-reports and allegations.  Tr. 34.

17         Mr. Booker cites evidence showing that some providers did note that he appeared to be in

18   pain and reported a need to recline (Dkt. 16 at 21), but none of them reported seeing the posture

19   that the ALJ observed at the hearing.  The ALJ was entitled to consider, among other reasons, his

20   observations of Mr. Booker when weighing his credibility, and Mr. Booker has not shown that

21   the ALJ's inferences therefrom were unreasonable.  *See Quang Van Han v. Bowen*, 882 F.2d

22   1453, 1458 (9th Cir. 1989) (holding that an ALJ may rely, in part, on his or her own observations

23   in assessing a claimant's credibility).

REPORT AND RECOMMENDATION - 6

1    In sum, because the ALJ provided multiple clear and convincing reasons to discount Mr.

2    Booker's credibility, the ALJ's adverse credibility determination should be affirmed.

3    **B.      The ALJ's Step Two Determinations**

4          The ALJ found that Mr. Booker's depressive disorder, rule-out personality disorder,

5    alcohol dependence, and polysubstance dependence were medically determinable impairments,

6    but were not severe impairments for purposes of a step two determination.  Tr. 28-30.  In so

7    finding, the ALJ afforded "little weight" to two examining psychologists who diagnosed Mr.

8    Booker with mental disorders causing disabling functional limitations.  Tr. 29-30.  Mr. Booker

9    argues the ALJ erred in discounting those psychologists' opinion, and specifically erred in

10   considering the impact of Mr. Booker's drug addiction and alcoholism ("DAA") when

11   evaluating the severity of his mental impairments.

12         Shawn Kenderdine, Ph.D., evaluated Mr. Booker in October 2011, and diagnosed him

13   with alcohol dependence, noting that he was unable to "differentiate alcoholism from [Mr.

14   Booker's] other psychiatric disorders."  Tr. 702.  The ALJ assigned "little weight" to Dr.

15   Kenderdine's opinion because another psychologist, L. Lynn Mades, Ph.D., diagnosed various

16   mental conditions (in addition to alcohol dependence) and "provided well-explained rationales to

17   support the diagnoses" and opinions regarding their limited effect on Mr. Booker's functioning.

18   Tr. 29, 537-41.  Mr. Booker argues that the ALJ's interpretation of Dr. Kenderdine's opinion vis-

19   à-vis Dr. Mades's opinion is internally inconsistent with his conclusion that Mr. Booker did not

20   have any mental impairments, because the ALJ purported to credit Dr. Mades's opinion over Dr.

21   Kenderdine's, and yet still rejected Dr. Mades's opinion that Mr. Booker had mental

22   impairments.  Dkt. 16 at 8.

23         Mr. Booker's argument overlooks the full scope of Dr. Mades's opinion: Dr. Mades

REPORT AND RECOMMENDATION - 7

1   opined that Mr. Booker had several mental diagnoses, but also opined that Mr. Booker's mental

2   symptoms were mild and that it was likely that his substance abuse was a "contributing factor in

3   his reported mood problems." Tr. 541.  For these reasons, the ALJ concluded that Mr. Booker's

4   mental impairments were not severe. Tr. 28-29.  The ALJ's decision is therefore not internally

5   inconsistent, because Dr. Mades's opinion is contrary to Dr. Kenderdine's opinion and supports

6   the ALJ's conclusion that Mr. Booker's mental impairments are not severe.

7           The ALJ also rejected the opinion of William Wilkinson, Ed.D., who diagnosed Mr.

8   Booker with bipolar disorder, anxiety disorder, and polysubstance dependence in November

9   2011. Tr. 30, 709-15.  Dr. Wilkinson's description of functional limitations was not particularly

10  detailed, but he did opine generally: "His chief complaint is his physical condition and pain.  For

11  now, along with this, his concentration and focus, as well as judgment are not too aligned with a

12  normal pressured, 40 hour work effort, which would require better prognosis." Tr. 711.  The

13  ALJ afforded little weight to Dr. Wilkinson's opinion because (1) he relied on Mr. Booker's non-

14  credible self-report rather than exam findings in rating his Global Assessment of Functioning

15  score; (2) he did not "account for nor . . . mention the claimant's alcohol dependency as a factor

16  in the claimant's functioning, an issue that was identified by the other examining psychologists";

17  and (3) his description of Mr. Booker's functioning is inconsistent with how Mr. Booker reported

18  his functioning to other providers.  Tr. 30.

19          Mr. Booker has not shown that any of these reasons is not legitimate.  Although he

20  challenges the ALJ's first reason on the grounds that the ALJ erred in discounting his own

21  credibility, and by discounting Dr. Wilkinson's opinion for relying on non-credible self-report,

22  the ALJ provided multiple clear and convincing reasons to discount Mr. Booker's credibility, as

23  explained in the previous section.  As to the second reason, Mr. Booker argues that the ALJ was

REPORT AND RECOMMENDATION - 8

1  not free to disregard evidence regarding his substance abuse without performing the two-step

2  DAA analysis outlined in *Bustamante v. Massanari*, but the ALJ did not simply disregard

3  evidence of Mr. Booker's substance abuse: he explained why he credited Dr. Mades's opinion

4  that even accounting for Mr. Booker's substance abuse, his mental impairments caused only mild

5  functional limitations.  *See* Tr. 541.  The State agency psychological consultant also opined that

6  Mr. Booker's mental symptoms were mild.  Tr. 495-505.  Relying on those opinions, the ALJ

7  found that Mr. Booker's substance abuse was not disabling, which precludes the need for a two-

8  step DAA analysis.  *See* Social Security Ruling 13-2p, 2013 WL 621536, at *5-7 (Feb. 20, 2013)

9  (providing that if a claimant's impairments, including DAA, are not disabling, then the ALJ need

10  not go on to determine DAA materiality using the two-step process).

11        The ALJ lastly relied on discrepancies between the functioning Mr. Booker reported to

12  Dr. Wilkinson and how he described his functioning to others.  Tr. 30.  For example, the ALJ

13  noted that Mr. Booker testified at the hearing or reported to providers that he completes

14  household chores, maintains personal hygiene, manages his medication independently, can

15  interact adequately with others, attend appointments on his own, and can maintain enough

16  concentration to watch television and write.  Tr. 28.  These reports are not entirely consistent

17  with Dr. Wilkinson's description of Mr. Booker's activities of daily living.  *See* Tr. 711.  Thus,

18  this is a legitimate reason to discount Dr. Wilkinson's opinion.  *See Rollins v. Massanari*, 261

19  F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that

20  was inconsistent with the claimant's level of activity).

21        Because the ALJ properly discounted the opinions of Drs. Kenderdine and Wilkinson,

22  and instead relied on the opinions of Dr. Mades and a State agency consultant, Mr. Booker has

23  failed to establish error in the ALJ's step-two analysis.  The ALJ did not err in concluding that

1 | Mr. Booker's mental impairments were not severe.

2 | **C.      The ALJ's Evaluation of the Medical Opinions**

3 |       Ms. Thompson completed a DSHS form opinion regarding Mr. Booker's physical

4 | functioning in October 2011.  Tr. 662-65.  In her contemporaneous treatment notes, Ms.

5 | Thompson indicated that she did not have access to Mr. Booker's MRI results, but she did

6 | perform range-of-motion testing.  Tr. 622-23.  Based on that testing, she opined that Mr. Booker

7 | could lift a maximum of 50 pounds, and lift/carry 10 pounds frequently.  Tr. 662.

8 |       In January 2012, Mr. Booker's treating physician Dr. Gomez opined that his ability to

9 | work is "severely limited due to pain in foot and neck. . . . [He] should not be lifting heavy

10 | objects, walking long distances, standing for long periods, or even sitting for long periods

11 | without ability to recline or move around due to pain."  Tr. 605.  At some later time, Mr.

12 | Booker's treating physician reviewed Ms. Thompson's opinion and appended a note of her own,

13 | which was submitted for the first time to the Appeals Council, indicating that Mr. Booker

14 | "[c]annot perform light duty for work.  Extremely limited due to spine/foot disease causing

15 | severe pain."  Tr. 722.

16 |       The ALJ afforded significant weight to Ms. Thompson's opinion and little weight to Dr.

17 | Gomez's opinion.  Tr. 34.  The ALJ indicated that Dr. Gomez's opinion is inconsistent with the

18 | overall record and is based "to some degree on the claimant's complaints, which, as discussed

19 | above, are unreliable due to credibility concerns."  Tr. 34.  The ALJ also found that Dr. Gomez's

20 | opinion lacked "quantifiable measures of the claimant's actual functioning," which he found to

21 | be less limited than Mr. Booker alleged.  *Id.*  The ALJ further noted that the jobs identified at

22 | step five are nonetheless light jobs and at least one of those (which exists in significant numbers)

23 | would allow him to change positions every 30 minutes.  Tr. 34-36.

REPORT AND RECOMMENDATION - 10

Mr. Booker argues that Dr. Gomez's opinion should have been given more weight than Ms. Thompson's, because Dr. Gomez was a treating physician and Ms. Thompson evaluated him only once and was not an acceptable medical source. Dkt. 16 at 12-13.  Mr. Booker also argues that the ALJ erred in independently interpreting evidence as inconsistent with Dr. Gomez's opinion, including Dr. Gomez's own treatment notes and other evidence that she reviewed, because she must have viewed that evidence as supporting her opinions. Dkt. 16 at 13-14.  Mr. Booker further argues that although the ALJ stated that Dr. Gomez's opinion lacked "objective findings," she did provide specific opinions regarding Mr. Booker's ability to lift heavy objects, bear weight, sit for long periods, or walk for long distances. Dkt. 16 at 13 (citing Tr. 607).

Although Mr. Booker accurately describes Dr. Gomez as an acceptable medical source and Ms. Thompson as an unacceptable medical source, this distinction in their status does not necessarily require more weight to be given to Dr. Gomez's opinion.  *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the Social Security Administration] will evaluate every medical opinion we receive.").  Furthermore, the ALJ explained why he found other evidence to be inconsistent with Dr. Gomez's opinion; the fact that she reviewed that same evidence does not necessarily imply that her opinion was consistent with that evidence.  The ALJ is entitled to review the evidence to identify and resolve inconsistencies.  *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions).  Finally, the ALJ did not state (as claimed by Mr. Booker) that Dr. Gomez's opinion lacked objective findings; he said that her opinion lacked "quantifiable findings," which is a reasonable characterization of Dr. Gomez's opinions.  Dr. Gomez did not indicate a specific level of activity that Mr. Booker could do or not do; she did not define "heavy," "long," or "extremely limited," which renders her opinions imprecise.  *See, e.g.*, Tr.

1    605, 722.  Accordingly, the ALJ did not err in evaluating the conflicting opinions of Ms.

2    Thompson and Dr. Gomez.

3                                        **CONCLUSION**

4          For the foregoing reasons, the Court recommends that the Commissioner's decision

5    should be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

6          A proposed order accompanies this Report and Recommendation.  Objections, if any, to

7    this Report and Recommendation must be filed and served no later than **April 22, 2014 (14**

8    **days).**  If no objections are filed, the matter will be ready for the Court's consideration on **April**

9    **23, 2014**.  If objections are filed, any response is due within 14 days after being served with the

10   objections.  A party filing an objection must note the matter for the Court's consideration 14

11   days from the date the objection is filed and served.  Objections and responses shall not exceed

12   twelve pages.  The failure to timely object may affect the right to appeal.

13         DATED this 8th day of April, 2014.

14                                        _____

15                                        BRIAN A. TSUCHIDA
                                          United States Magistrate Judge

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 12